UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUBEN E. RIVERA, as Executor
for the Estate of Ruben E. Rivera, Sr.,

                        Plaintiff,                   09-cv-5906 (RPP)

       - against -

                                                       **OPINION AND ORDER**

SHEET METALWORKERS' NATIONAL
PENSION FUND,

                        Defendant.
------------------------------------------------------------X

ROBERT P. PATTERSON, JR., U.S.D.J.

      This is a claim for benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff alleges that Defendant Sheet Metal Workers' National Pension Fund ("the Fund") wrongfully withheld benefits from him upon the death of his father, Ruben Rivera, Sr., who was a participant in a pension plan administered by the Fund. Defendant moves for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND

    Ruben E. Rivera, Sr., Plaintiff's father, was employed in the Sheet Metal Industry from July 1968 to May 30, 2003 (Defendant's 56.1 Statement of Undisputed Facts ("Def. Facts") at 5)[1]. Defendant Sheet Metal Workers' National Pension Fund is a

---

[1] Pursuant to Local Rule 56.1, Defendant included a Statement of Undisputed Facts with the April 16, 2010 Memorandum of Law in Support of Defendant's Motion for Summary Judgment. Plaintiff filed a Statement of Undisputed Facts on June 24, 2010, and explained that Plaintiff does not dispute any of Defendant's Rule 56.1 Statement of Undisputed Facts. With this Rule 56.1 statement, Plaintiff submitted omitted pages from the Summary Plan Description submitted as Defendant's Exhibit C, which appear as Exhibit A to Plaintiff's Rule 56.1 statement.

multiemployer benefit fund within the meaning of § 3 of ERISA.  (Def. Facts at 2.)  The Fund was established for the purpose of providing pension and related benefits to employees of employers in the Sheet Metal Industry who have collective bargaining agreements with affiliated unions of the Sheet Metal Workers' International Union.  (Id.)  The Fund is administered by a Board of Trustees composed of equal numbers of representatives from Union and management.  (Id.)

Ruben Rivera, Sr., was a participant of the Pension Fund.  On May 6, 2003, Rivera, Sr. sent a letter to the Fund requesting retirement under the plan.  (Def. Facts at 5.)  On May 7, 2003, the Fund sent Rivera, Sr. a letter acknowledging his request for retirement.  (LeBlanc Decl. Ex. D.)  The letter requested the following information from Rivera, Sr.: proof of age, his current spouse's date of birth, his last day of work, a beneficiary form and disability forms.  (Id.)  On June 6, 2003, a Pension Processor for the Fund, Rachel Hayden, sent Rivera, Sr. a letter informing him that he qualified for a pension. (LeBlanc Decl. Ex. E.)  The letter enclosed the following forms: 1) Election of Pension Benefits; 2) Retirement Declaration – Terms and Conditions; 3) Signature Page; 4) Federal Tax Withholding Election Form; 5) Direct Deposit Authorization; 6) Notarized Husband/Wife Rejection Form; 7) Voluntary Dues Deduction Card; 8) Information about the Pension Fund's Supplemental Medicare Insurance Subsidy.  (Id.)

On or about June 14, 2003, Rivera, Sr. returned the Election of Pension Option Form, the Rejection Form for Husband and Wife Pension, and a Designation of Primary Beneficiaries Form.  (LeBlanc Decl. Ex. F, G, H.)

The Election of Pension Option Form included the following instructions:

> You must select a pension option before we can begin payments.  Listed below are your pension options, stating both the terms and amount of each

> pension.  In the event of your death, if any guarantees have not been met, the remaining payments would be payable to your designated beneficiary(ies).  Please read and understand each option carefully, and decide which <u>one</u> is the best for you.
>
> By signing below, you are indicating that you understand that you will initially receive a pension in the amount indicated below, and this amount may be adjusted as additional information is received.
>
> …
>
> IMPORTANT!  THE PENSION OPTION YOU SELECT CANNOT BE CHANGED ONCE WE ISSUE YOUR FIRST CHECK!
> (LeBlanc Decl. Ex. F.) (emphasis in original)

The form provided four benefit options.  (Id.)  The first, on page one, was "55/30 – 60 Certain Payment Option," which provided a monthly payment to Rivera, Sr. of $3,870.  (Id.)  The second option for Rivera, Sr., on page two, was the "55/30 – 120 Certain Payments Option," which provided a monthly payment of $3,755.  (Id.)  Rivera, Sr. drew a large "X" over the "55/30 – 120 Certain Payments Option".  (Id.)  The third benefit option, on page two, for Rivera, Sr. was the "55/30 – Level Income Option Until Age 62," which provided a monthly payment of $4,737, which dropped to $3,421 after the age of 62.  (Id.)  Rivera, Sr. signed his name immediately below this description, in the place provided for a signature, and wrote the date June 12, 2003, next to his signature.  (Id.)  The fourth benefit option for Rivera, Sr., on page two, was the "55/30 – Level Income Option Until Age 65," which provided a monthly payment of $4,643.  Rivera, Sr. drew a large "X" over the "55/30 – Level Income Option Until Age 65." (Id.)

Rivera, Sr. only signed his name under one option, the "55/30 – Level Income Option Until Age 62" option.  (Id.)  The Election of Pension Benefit Form provided the following description for the "55/30 – Level Income Option Until Age 62":

3

> I will receive the monthly benefit payment until I reach age 62 at which
> time I shall receive the monthly benefit payment listed after age 62. In the
> event of my death, there are no further benefits payable from the plan.
> *Completed Husband/Wife Rejection Form Required. (Id.)

Rivera, Sr. signed his name immediately below this description in the space provided. (Id.)

Rivera, Sr. also returned a "Rejection Form for Husband and Wife Pension." (LeBlanc Decl. Ex. G.) On that form, Rivera checked a box next to the statement "I hereby swear that I am not legally married as of my effective date of pension." (Id.) Next to the statement "I hereby state that I designate as my Primary Beneficiary," Rivera, Sr. wrote, "See attached list of (4) primary beneficiaries." (Id.) At the bottom of the "Rejection Form for Husband and Wife Pension," Rivera, Sr. signed his name and wrote the date June 14, 2003. (Id.) Rivera, Sr.'s signature was notarized that same day by Notary Public of the State of New York Anne C. Mingacci. (Id.)

Rivera, Sr. also returned a filled out "Designation of Primary Beneficiaries." (LeBlanc Decl. Ex. H.) On this form, Rivera, Sr. listed Minette Drew, Desiree Rivera, Ruben E. Rivera, Jr., and Christopher M. Rivera. (Id.) Rivera, Sr. signed the "Designation of Primary Beneficiaries," and his signature was witnessed by Evangelia Vandoulakis and notarized by the Notary Public of the State of New York Anne C. Mingacci. (Id.)

On June 24, 2003, the Fund sent Rivera, Sr. a check in the amount of $8,542. (Def. Facts at 9.) This amount represented the net amount, after taxes, of $9,474, which was equal to two months of pension payments under the "55/30 – Level Income Option Until Age 62" form of benefit, which provided monthly payments in the amount of $4,737. (Id.) The Fund paid Rivera, Sr. a gross pension benefit of $4,737 for the months of

August, September, and October 2003, which was consistent with the "55/30 Level Income Option Until Age 62" form of benefit. (Id.)

On September 16, 2003, the Fund sent Rivera, Sr., a letter recalculating his pension based upon hours Rivera, Sr. worked since February 28, 2003. (LeBlanc Decl. Ex. I.) The additional hours that Rivera, Sr. worked resulted in a payment of $144, or a retroactive increase of his pension by $36. Going forward, Rivera, Sr.'s monthly benefit was $4,773. (Id.) This letter described Rivera, Sr.'s form of pension benefit as "Level Income @ 62." (Id.)

On or about February 20, 2004, Rivera, Sr. died. (Def. Facts at 9.) On February 24, 2004, Toni Olston of the Fund's Pension Benefits Department wrote a letter to Plaintiff Ruben Rivera, Jr. acknowledging the notice he provided of Rivera, Sr.'s death. (LeBlanc Decl. Ex. K.) In the letter, Alston informed Rivera, Jr. that "[u]nder the type of pension [Rivera, Sr.] chose at his retirement, there are no further benefits payable." (Id.) Alston mentioned that the Fund would issue a stop payment on Rivera, Sr.'s payment for the month of March. (Id.)

There is no evidence that Rivera, Jr., took any further action in connection with this matter until February 17, 2009, when Plaintiff commenced this action by filing a complaint in the New York Supreme Court for New York County. Plaintiff's Complaint alleged in a single count that the Fund owed Plaintiff death benefits in the amount of $232,200. On June 26, 2009, the Fund removed the case to this Court on the grounds that the Court had jurisdiction over the Plaintiff's claim under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. Defendant filed a motion for summary judgment on April 16, 2010.

Plaintiff filed a response in opposition on June 23, 2010, and Defendant filed a reply brief on July 6, 2010. Oral argument was heard on the motion on Tuesday, August 31, 2010.

## DISCUSSION

    I.    <u>The Summary Judgment Standard</u>

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex v. Catrett</u>, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986).

The Fund asserts three bases for summary judgment; first, that Plaintiff's claim is time barred; second, that Plaintiff has failed to exhaust administrative remedies; and third, that there is no issue of fact regarding Fund's determination that Rivera, Sr. selected the "55/30 Level Income Option Until Age 62" and therefore Plaintiff is not entitled to death benefits. This opinion will first address the third basis.

    II.    <u>The Fund's Determination Was Not Arbitrary and Capricious</u>

The Fund's determination of benefits is subject to arbitrary and capricious review. "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate

conclusion unless it is 'arbitrary and capricious.'" Pagan v. Nynex Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).

A review of the Fund's plan document demonstrates that that the Fund delegates complete discretion to the Fund's Trustees.  (See LeBlanc Decl. Ex. At 6; LeBlanc Decl. Ex. B, Section 8.03 at 60.)  In particular, Section 8.03 of the plan grants the Fund's Trustees discretion to determine pension eligibility and benefits:

> (a) The Trustees shall have the sole and absolute power, authority and discretion to determine:
>
>> (1) The standard of proof required in any case;
>>
>> (2) The application and interpretation of this Plan;
>>
>> (3) Entitlement to or amount of pension;
>>
>> (4) The disability, the timing, extent and or duration of the disability, or non-disability of Participants and the effect these determinations have on the Participant's eligibility for Disability Benefits under the Plan;
>>
>> (5) The crediting of Future or Past Service Credit and/or Contribution Hours; and
>>
>> (6) The crediting of Hours of Work and Years of Service.
>
> (b) The decisions of the Trustees or any delegate of the Trustees with respect to any of the foregoing shall be final and binding.  Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and non-discriminatory manner.  In addition, whenever the Trustees have delegated their power or authority to a committee or person, the delegate shall have the same power and authority as the Trustees to the extent of the Trustees' delegation to such committee or person.

The plan documents unambiguously grant the Fund Trustees discretion to determine pension eligibility and the power to delegate this discretion.  Therefore, the Fund's

determination that Rivera, Sr. selected a plan that does not provide benefits to Plaintiff must be affirmed unless it was arbitrary and capricious.

"Under the arbitrary and capricious standard of review, we may overturn an administrator's decision to deny. . . benefits 'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'"  Hobson v. Metro. Life Ins. Co., 574 F. 3d 75, 82 (2d Cir. 2009).  We are not free to substitute our own judgment for that of the Fund as if we were determining eligibility anew.  Pagan, 52 F.3d 438 at 442.

In making its eligibility determination, the Fund relied on the "Election of Pension Option" form submitted by Rivera, Sr.  As discussed above, the instructions on this form direct the applicants to read and understand each option and then select "one" by "signing an option."  Underneath each description is a space for signature and date. Rivera, Sr., followed these instructions in choosing the "55/30 Level Income Option Until Age 62" by signing his name beneath the description and writing in the date.

Plaintiff claims that there is an issue as to whether Rivera, Sr. selected the "55/30 Level Income Option Until Age 62," or the "55/30-60 Certain Payments Option." Plaintiff attributes significance to the fact that Rivera, Sr. drew a large "X" over the two options surrounding the "55/30 Level Income Option Until Age 62" description, but did not draw a large "X" over the description for the "55/30-60 Certain Payments Option." Nowhere in the instructions are applicants directed to draw "X"s over the plans they are not selecting.  It was more than reasonable for the Fund to determine that Rivera, Sr.'s signature and date beneath the "55/30 Level Income Option Until Age 62" was intended to indicate that he selected that plan.

8

Moreover, there is additional evidence to support the Fund's interpretation. First, the Fund paid Rivera, Sr. monthly payments equal to the monthly payment level listed on the "Election of Pension Option Form" for the "55/30 Level Income Option Until Age 62" for five months, and there is no evidence that Rivera, Sr. voiced any objection. Second, the Fund wrote a letter to Rivera, Sr. informing him of the increase in his monthly benefits that described his benefits as the 'Level Income @ 62" option, and paid benefits consistent with this plan for several additional months. These two communications put Rivera, Sr. on notice that the Fund determined he had selected the "55/30 Level Income Option Until Age 62." There is no evidence that Rivera, Sr. challenged or objected to this determination. Even if, despite the evidence to the contrary, Plaintiff's contention that Rivera, Sr. selected the "55/30-60 Certain Payments Option" was equally reasonable, the Court would not disturb the Fund's determination. Pagan, 52 F.3d at 443. ("Where it is necessary for a reviewing court to choose between two competing yet reasonable interpretations of a pension plan, this Court must accept that offered by the administrators.")

Plaintiff also contends that Rivera, Sr.'s submission of a list of beneficiaries to the plan introduces an ambiguity as to which plan he chose. While Rivera, Sr.'s submission of a list of beneficiaries does appear to be inconsistent with his choice of a plan with no death benefits, in order to reverse the Fund's interpretation, this Circuit requires that the interpretation be arbitrary and capricious. Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1272-3 (2d Cir. 1995). The Fund's interpretation of Rivera, Sr.'s application is not arbitrary and capricious. The Fund's determination that Rivera, Sr. selected the "55/30 Level Income Option Until Age 62" was supported by his

9

signature and entry of the date signed, and Plaintiff offers no evidence that Rivera, Sr. signed and dated any other option or that his submission of a beneficiary form shows he meant to choose the lower benefits of the "55/30-60 Certain Payments Option." The arbitrary and capricious standard requires the acceptance of interpretation reached by the Fund.

It was also not arbitrary and capricious for the Fund to determine that the "55/30 Level Income Option Until Age 62" does not provide for death benefits. The plan documents received by Rivera, Sr. explained that the Level Income Option did not provide for death benefits, and the Summary Plan Description he received further explained that if the applicant chooses a Level Income Option, no benefits will be paid to the participant's beneficiary upon his death.[2] (LeBlanc Decl. Ex. C at 36.)

For these reasons, the Defendant's motion for summary judgment is granted.

III.    Timeliness and Administrative Exhaustion

Defendant also moves for summary judgment on the grounds that Plaintiff's claim is untimely and that Plaintiff has failed to exhaust administrative remedies. While Defendant's motion succeeds on the basis previously discussed, the remaining two grounds asserted by the Fund will be addressed.

Defendant contends that Plaintiff's claim is time barred because Section 8.04 of the Fund's Plan grants a participant or beneficiary 180 days after receipt of a denial of benefits to file an appeal with the Fund, and 90 days to bring a complaint in court after this appeal is denied. (LeBlanc Decl. Ex. B.) The Summary Plan Description also explains that participants have 180 days from notice of denial to file an appeal. (LeBlanc

---

[2] In Plaintiff's brief in opposition to summary judgment, Plaintiff does not contend that the "55/30 Level Income Option Until Age 62" provides for death benefits.

Decl. Ex. C.) Plaintiff contends that he is not subject to either the 90-day or the 180-day deadlines because the Fund never denied a claim or appeal (Pl's Mem. in Opp'n at 2), and that the six year statute of limitations for breach of contract applies.

The Fund's letter of February 24, 2004, to Rivera, Jr. does not state it is denying any claim although it does state that "[u]nder the type of pension [Rivera, Sr.] chose at his retirement there are no future benefits payable." (LeBlanc Decl. Ex. K.) Further, as Plaintiff points out, the Summary Plan Description's "In the Event of Death" section advises that beneficiaries should "notify the Pension Benefits Department as soon as possible," and does not advise beneficiaries to file any claim or appeal. (Pl.'s Rule 56.1 Statement Ex. A.) Thus, because there is no evidence that Plaintiff filed a claim for benefits, or that the Fund actually denied a claim, Plaintiff's claim is not untimely.

Defendant also contends that Plaintiff's complaint fails because he neglected to exhaust administrative remedies prior to initiating litigation. In response, Plaintiff claims that Defendant, in response to Plaintiff's providing notice of Rivera, Sr.'s death, should have provided instructions as to the necessity to file a written claim and given a sufficient explanation as to the reason for denial. (Pl.'s Mem. in Opp'n at 3.) ERISA requires that an initial letter denying benefits must include in a manner understood by the claimant:

> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference the specific Plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action…

29 C.F.R. § 2560.503-1(g)(1).

If the Fund was denying a claim for benefits to the estate when it wrote "[u]nder the Plan he chose at his retirement, there are no further benefits payable," the Fund was under a statutory obligation to notify Rivera, Jr. of the applicable procedures and deadlines. A notice that fails to substantially comply with these requirements relieves the claimant of his duty to exhaust administrative remedies. Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 107 (2d Cir. 2003). In Burke, the denial notice provided by the retirement plan was found insufficient because it did not expressly notify Plaintiff of the deadline for appeal. Id. at 108. The letter in Burke instead included a cross-reference to a plan handbook, which the court found inadequate to impose a duty on a claimant to exhaust his administrative remedies. Id. Here, the letter provided by the Fund was less specific than that sent by the plan in Burke. The letter did not include any information that would have notified Rivera, Jr. of his need to file for review within 180 days. Furthermore, the Fund's failure to do so appears to contradict their advice on page 57 of the Summary Plan Description, explaining to plan participants that "[i]n the event of your death, your spouse or beneficiary should notify the Pension Benefits Department as soon as possible. The Department staff will guide your spouse or beneficiary through the process." (LeBlanc Decl. Ex. A.) The Fund's failure to provide such guidance exempted Plaintiff from the requirement to exhaust administrative remedies.

## CONCLUSION

Summary judgment is granted in favor of the Defendant. Plaintiff's claim is not time-barred nor barred by his failure to exhaust administrative remedies. However, the determination of the Fund that Rivera, Sr., selected a pension option that denied death benefits to any beneficiaries is not arbitrary and capricious, and therefore there is no

genuine issue of material fact and Defendant is entitled to judgment as a matter of law. Defendant's motion is granted and the Complaint is dismissed and this case is closed.

IT IS SO ORDERED.

Dated: New York, New York

September 21, 2010

                                              Robert P. Patterson, Jr.
                                              U.S.D.J.

**Copies of this Order have been sent to:**

**Counsel for Plaintiff:**

Kenneth Joelson, Esq.
Joelson & Rochkind
149 W. 72nd Street
New York, NY 10023
Tel: (212) 873-7063
Fax: (212) 496-9598

**Counsel for Defendant:**

Marc Rifkind
Brian J. Petruska
SLEVIN & HART, P.C.
1625 Massachusetts Ave. NW
Ste. 450
Washington, D.C. 20036
Tel: (202) 797-8700
Fax: (202) 797-8231

Adrienne L. Saldaña
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, N.Y. 10019
Tel: (212) 765-2100
Fax: (212) 765-8954